## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     *Plaintiff,*

vs.

                              Case No. 16-10141-01, 02, 03-EFM

CURTIS WAYNE ALLEN,

PATRICK EUGENE STEIN,

GAVIN WAYNE WRIGHT,

     *Defendants.*

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Curtis Allen's motion seeking an order directing the Clerk of Court Jury Coordinator to issue summonses to prospective jurors from both the Wichita-Hutchinson and Dodge City jury divisions to report for jury service for Defendants' upcoming trial. The motion was joined by Defendants Patrick Stein and Gavin Wright. On January 3, 2018, the Court held a hearing on the motion. Because the Court concludes that the current plan for selecting petit jurors does not infringe upon Defendants' statutory or constitutional rights, and Defendants lack standing to challenge the plan on behalf of citizens currently excluded from petit jury service, Defendants' Motion for Order to Have Prospective Jurors Summoned from Multiple Jury Divisions (Doc. 188) is denied.

## I.      Factual and Procedural Background

District of Kansas Local Rule 38.1 (also referred to as the "jury selection plan" or simply the "plan") governs the random selection of grand and petit jurors for the federal judicial District of Kansas.  The jury selection plan splits the District into six jury divisions: (1) Kansas City-Leavenworth; (2) Wichita-Hutchinson; (3) Topeka; (4) Dodge City; (5) Fort Scott; and (6) Salina.[1]  Under the plan, eligible jurors from all six jury divisions have the opportunity to serve on a grand jury panel.  The first grand jury panel sits at Kansas City, and consists of grand jurors from the Kansas City-Leavenworth and Fort Scott jury divisions.  The second panel sits at Topeka, and consists of grand jurors from the Topeka and Salina jury divisions.  And the third panel sits at Wichita, consisting of grand jurors from the Wichita-Hutchinson and Dodge City jury divisions.[2]

While the plan requires the Wichita grand jury panel to be composed of citizens from the Wichita-Hutchinson and Dodge City jury divisions, it does not impose the same requirement for petit juries.  Under the plan, the clerk must maintain a qualified jury wheel for each division, composed of names from the voter registration lists.[3]  When ordered to assign a petit jury panel, the clerk is directed to draw names from one of these divisional qualified jury wheels.[4]  The plan

---

[1] D. Kan. Rule 38.1(a).  The Wichita-Hutchinson jury division encompasses Butler, Cowley, Harper, Harvey, Kingman, Marion, McPherson, Reno, Rice, Sedgwick, and Sumner Counties.  The Dodge City jury division encompasses Barber, Barton, Clark, Comanche, Edwards, Finney, Ford, Grant, Gray, Greeley, Hamilton, Haskell, Hodgeman, Kearney, Kiowa, Lane, Meade, Morton, Ness, Pawnee, Pratt, Rush, Scott, Seward, Stafford, Stanton, Stevens, and Wichita Counties.

While it is unnecessary to list the Kansas counties encompassed by the other four jury divisions, it is worth noting that every single county in Kansas is included in one of the six jury divisions.

[2] D. Kan. Rule 38.1(h)(6)(B)(i)–(iii).

[3] D. Kan. Rule 38.1(f), (h)(1).

[4] D. Kan. Rule 38.1(h)(2).

does not, however, require the clerk to draw from multiple jury divisions when assembling a petit jury panel.

Consistent with this guidance, the jury coordinator only summons jurors from the Wichita-Hutchinson division when a jury trial is held at the Wichita federal courthouse. The same goes for jury trials held in Kansas City and Topeka: jurors are summoned from the Kansas-City Leavenworth division when a trial is held in Kansas City, and jurors are summoned from the Topeka division when a trial is held in Topeka.[5] Thus, in practice, citizens from the Dodge City, Fort Scott, and Salina jury divisions do not have the opportunity to serve as petit jurors in the District of Kansas.

This case was initiated after a grand jury returned an indictment charging Defendants—who resided within the Dodge City jury division—with one count of conspiracy to use a weapon of mass destruction, in violation of 18 U.S.C. § 2332a on October 19, 2016. Then, on December 14, a grand jury returned a superseding indictment that added weapons-related charges against Allen, in violation of 18 U.S.C. § 922(g), and against Stein, in violation of 18 U.S.C. § 924(c). And on March 16, 2017, a grand jury returned a second superseding indictment that added a civil rights conspiracy charge against all three defendants, in violation of 18 U.S.C. § 241, and added a charge against Wright for lying to the FBI to obstruct its investigation into this matter, in violation of 18 U.S.C. § 1001.

All of the alleged events occurred in Western Kansas within the confines of the Dodge City jury division. Yet, as Defendants point out, the citizens who live in this jury division are

---

[5] Congress has authorized the U.S. District Court for the District of Kansas to hold court in Kansas City, Lawrence, Leavenworth, Salina, Topeka, Hutchinson, Wichita, Dodge City, and Fort Scott. 28 U.S.C. § 96. Throughout this Court's history, court has been held in Kansas City, Leavenworth, Salina, Topeka, Wichita, and Fort Scott. However, the only active federal courthouses are located in Kansas City, Topeka, and Wichita.

currently excluded from serving as petit jurors for the trial scheduled to take place in Wichita. Accordingly, Defendants filed this present motion asking the Court to order the Clerk of Court Jury Coordinator to issue summonses to prospective jurors from both the Wichita-Hutchinson and Dodge City jury divisions to report for service on the petit jury for the upcoming trial.

## II.      Discussion

Defendants make two primary arguments in this case: (1) that the jury selection plan employed by the District of Kansas violates Defendants' right to a jury trial before a fair cross-section of the community, as guaranteed by the Sixth Amendment and Jury Selection and Service Act of 1968 ("Jury Act"); and (2) by excluding Dodge City jury division citizens from petit jury service, the plan violates those citizens' rights under the Fifth and Sixth Amendments, as well as rights established under the Jury Act.  The Court will address each argument in turn.

## A.      Defendants' Right to a Jury Trial before a Fair Cross-Section of the Community Has Not Been Violated

Defendants first argue that the District of Kansas's method for selecting petit jurors violates their right to a jury that has been drawn from a fair cross-section of the community. More specifically, Defendants contend that they have a right to have citizens from the Dodge City jury division included in the petit jury pool.  According to Defendants, the citizens of these 28 counties "live in more rural areas and are more politically conservative."  As Defendants are alleging discrimination in the jury selection process, they have the burden of establishing the intentional exclusion of a legally cognizable group.[6]

---

[6] *See Rose v. Mitchell*, 443 U.S. 545, 565 (1979).

The Sixth Amendment guarantees the accused the right to an "impartial jury" of the "State and district wherein the crime shall have been committed . . . ."[7]  In *Taylor v. Louisiana*,[8] the U.S. Supreme Court declared that an essential characteristic of an impartial jury is that the jury be drawn from a fair cross-section of the community.[9]  The fair-cross-section requirement has also been legislatively mandated by Congress in the Jury Act.[10]  As the Jury Act codifies Defendants' Sixth Amendment rights, a statutory claim is evaluated under the same standards enunciated for the constitutional claim.[11]

*Taylor* mandated that "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude *distinctive groups* in the community and thereby fail to be reasonably representative thereof."[12]  This requirement, however, is a means of assuring "not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)."[13]

In *Duren v. Missouri*,[14] the Supreme Court set forth the criteria necessary to establish a prima facie violation of the fair-cross-section requirement.  A defendant must show: (1) the group alleged to be excluded is a "distinctive group" in the community; (2) the representation of

---

[7] U.S. Const. amend. VI.

[8] 419 U.S. 522 (1975).

[9] *Id.* at 530–31.

[10] *See* 28 U.S.C. § 1861 ("It is the policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes.").

[11] *United States v. Shinault*, 147 F.3d 1266, 1270 (10th Cir. 1998).

[12] *Taylor*, 419 U.S. at 538 (emphasis added).

[13] *Holland v. Illinois*, 493 U.S. 474, 480 (1990) (emphasis in original).

[14] 439 U.S. 357 (1979).

this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to systematic exclusion of the group in the jury selection process.[15]

Defendants' constitutional challenge fails because they cannot satisfy the first requirement of the *Duren* test—the group alleged to be excluded is not "distinctive."  The Supreme Court has declined to "precisely define the term 'distinctive group,' " but has held that the exclusion of a particular group was unobjectionable where it did not contravene the three purposes of the cross-section requirement: (1) avoiding "the possibility that the composition of juries would be arbitrarily skewed in such a way as to deny criminal defendants the benefit of the common-sense judgment of the community"; (2) avoiding an "appearance of unfairness"; and (3) ensuring against deprivation of "often historically disadvantaged groups of their right as citizens to serve on juries in criminal cases."[16]

The Tenth Circuit, however, has provided a three-part test for determining whether a group is distinctive.[17]  A defendant must prove: (1) the group is defined by a limiting quality (i.e., the group has a definite composition such as race or sex); (2) a common thread or basic similarity in attitude, idea, or experience runs through the group; and (3) a community of interests exists among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.[18]

---

[15] *Id.*; *see also United States v. Green*, 435 F.3d 1265, 1271 (10th Cir. 2006).

[16] *See Lockhart v. McCree*, 476 U.S. 162, 175 (1986).

[17] *See Green*, 435 F.3d at 1271–72.

[18] *Id.* at 1271 (citing *United States v. Raszkiewicz*, 169 F.3d 459, 463 (7th Cir. 1999); *United States v. Fletcher*, 965 F.2d 781, 782 (9th Cir. 1992); *United States v. Canfield*, 879 F.2d 446, 447 (8th Cir. 1989); *Ford v. Seabold*, 841 F.2d 677, 681–82 (6th Cir. 1988); *Barber v. Ponte*, 772 F.2d 982, 986–87 (1st Cir. 1985); *Willis v. Zant*, 720 F.2d 1212 (11th Cir. 1983)).

Courts addressing this issue have found that groups characterized by race, religion, ethnicity, and gender meet this distinctiveness standard.[19]  But that list is essentially exhaustive.[20]  Groups characterized by age, occupation, disability, education, and other characteristics are not distinctive under *Taylor*, and their exclusion does not run afoul of the Constitution.[21]  "Neither does a person's geographic location place that person in a distinct group."[22]  However, geographic location may be considered a distinctive group if the location is "profoundly culturally distinct."[23]

---

[19] *See, e.g.*, *Duren*, 439 U.S. at 364 (recognizing women as a distinctive group); *United States v. Gelb*, 881 F.2d 1155 (2d Cir. 1989) (recognizing Jews as a distinctive group); *United States v. Shinault*, 147 F.3d 1266, 1271–72 (10th Cir. 1998) (noting that the Government conceded on appeal that Asians, Blacks, and Hispanics are all distinctive groups); *United States v. Nelson*, 137 F.3d 1094 (9th Cir. 1998) (recognizing Hispanics as a distinctive group); *United States v. Yazzie*, 660 F.2d 422, 426 (10th Cir. 1981) (recognizing Native Americans as a distinct group).

[20] *See Holland*, 493 U.S. at 502, (Marshall, J., dissenting) ("To date, at least, this Court has found only women and certain racial minorities to have the sorts of characteristics that would make a group 'distinctive' for fair-cross-section purposes.").

[21] *See, e.g.*, *Johnson v. McCaughtry*, 92 F.3d 585, 592 (7th Cir. 1996) (noting that "age" had already been rejected by that circuit as a characteristic which can define a group for purposes of the fair-cross-section requirement); *Fletcher*, 965 F.2d at 782 (concluding that college students are not a distinct group); *Anaya v. Hansen*, 781 F.2d 1 (1st Cir. 1986) (concluding that blue collar workers are not a "sufficiently coherent group"); *United States v. Afflerbach*, 754 F.2d 866, 870 (10th Cir. 1985) ("Persons who choose not to register to vote do not comprise such a cognizable group."); *State v. Spivey*, 700 S.W.2d 812, 814 (Mo. 1985) (concluding that the exclusion of deaf persons was lawful, as they do not have "a community of attitudes or ideas").

[22] *Green*, 435 F.3d at 1272.  *See United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012) (concluding that "residents of a particular county are not a 'distinctive' group in the community for Sixth Amendment purposes") (internal quotations and citations omitted); *United States v. Canfield*, 879 F.2d 446, 447 (8th Cir. 1989) (concluding that residents of Minneapolis are not a distinct group); *United States v. Test*, 550 F.2d 577, 582 n.4 (10th Cir. 1976) ("[G]eographic imbalance . . . does not violate the statutory and constitutional requirement that the jury panel represent a 'fair cross section of the community.' ").  *See also United States v. Conant*, 116 F. Supp. 2d 1015 (E.D. Wis. 2000) ("Indeed, every court that has looked at the question of whether the residents of a geographic area may constitute a 'distinctive' group for Sixth Amendment purposes solely due to the location of their residence has answered negatively."); *contra Alvarado v. State*, 486 P.2d 891 (Alaska 1971) (concluding that defendant was not afforded an impartial jury because prospective jurors were summoned from an area within 15 miles of Anchorage, which excluded 55 native villages comprising 72% of the district's native population).

[23] *Zicarelli v. Dietz*, 633 F.2d 312, 320 (3d Cir. 1980) (citing *Alvarado*, 486 P.2d 891).  *Alvarado* is the only case this Court is aware of in which the court concluded that residents of a particular geographic location were excluded in violation of the cross-section requirement.  There, the jurors were chosen from an area within a radius of 15 miles of Anchorage, precluding residents of virtually all native villages from representation on the panel.  The Alaska Supreme Court held this was a fair-cross-section violation, but noted that "the problem of selecting juries in

In their motion, Defendants conflate a number of different arguments and struggled to define the precise group they assert is "distinctive."   Liberally interpreting Defendants' arguments, the Court identifies four groups Defendants consider to be "distinctive": (1) the entire Dodge City jury division population; (2) registered Republican voters; (3) voters who voted for President Trump in the 2016 general election; and (4) citizens who live in rural communities. The Court will address each group below.

*1.*      *Citizens residing within the Dodge City jury division are not a distinctive group*

Here, the District of Kansas jury selection plan denies every citizen residing within the Dodge City jury division the opportunity to serve as a petit juror.  The question, then, is whether this "group" satisfies the distinctiveness requirement set forth in *Duren*.  It does not.  Turning to the factors enunciated in *Green*, the group first lacks a limiting quality; the group includes men and women of many different ages, races, ethnicities, religions, educations, and occupations.

Second, the group lacks a common thread or basic similarity in attitude, idea, or experience.  In support, Defendants cited recent voter data to argue that the entire population shares similar political opinions.   But the fact that voters in the Dodge City division preferred Donald Trump (the Republican Party nominee) over Hilary Clinton (the Democratic Party nominee) in the 2016 presidential election is unpersuasive.  True, Donald Trump received 75.5% of votes cast in the Dodge City jury division.  However, Defendants' statistic only accounts for eligible voters who actually cast a ballot.  Of the 113,896 registered voters in the Dodge City

---

Alaska is unique" due to the vast expanses of land, variety of cultural heritage, and the sparse population.  The court then suggested that selecting jurors from the senate election district in which the crime is alleged to have occurred would satisfy the constitutional requirement of impartiality.  *Alvarado*, 486 P.2d at 903–06.

division, 39.5% did not vote in the election.[24]  Thus, the 52,059 votes for Donald Trump only accounted for 45.7% of registered voters in the division.  The fact that less than half of the prospective jurors in the Dodge City division voted for a particular Presidential candidate does not establish that a common thread or basic similarity in ideas runs through the group.  Neither does the fact that 56% of registered voters within the division registered as Republican.  There is simply too much disparity amongst these voters to conclude that the group shares a similar attitude, idea, or experience.

Defendants also argue that the citizens in the Dodge City jury division tend to reside in rural locations, which would suggest they share a similar attitude, idea, or experience.  However, Defendants provided no evidence that tended to support their proposition.[25]  The Dodge City jury division contains hundreds of individual and distinct communities across 28 counties.  Defendants were unable to explain how these citizens share similar attitudes, ideas, or experiences.  Accordingly, Defendants have not been able to satisfy the second element.

Third, Defendants are unable to establish that a community of interests exists among members of the Dodge City division such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.[26]  In their motion, Defendants did not identify a community of interests that exists among the members of the

---

[24] According to the statistics provided by Defendants, there are 113,896 registered voters in the Dodge City jury division, while only 68,919 votes were cast in the 2016 general election.  Thus, approximately 60.5% of eligible voters cast a ballot, while the other 39.5% abstained.

[25] Defendants simply stated: "Even passing knowledge of the State of Kansas confirms this to be true—the counties in western Kansas that encompass the Dodge City jury division are more rural."  Doc. 188, at 8.  Defendants did not provide the Court with the criteria necessary for a community to qualify as "rural," nor did Defendants provide any statistics regarding the number of citizens that reside in rural communities in each of the divisions.

[26] *See Green*, 435 F.3d at 1271.

Dodge City division.  So at the hearing, the Court asked Defendants to define the characteristics that distinguish citizens of the Dodge City division from citizens of the Wichita-Hutchinson division.  After all, the parties acknowledged that the Wichita-Hutchinson division contains many rural, conservative citizens as well.

Counsel for Wright argued that the difference between the two divisions is found in the groups' belief systems and ideologies.  Although conceding that the distinction may not be legally cognizable, counsel insisted the distinction was factually cognizable:

> I think the issue that we might have, if we don't [include the Dodge City division], is that there are, I believe, ideologies that are fundamental and strongly held ideologies about things that will govern people's approaches to the evidence. It doesn't mean they're right or wrong, but they are different.  And I believe there's a difference in southwest Kansas where these crimes are alleged to have been committed.

The Court is not persuaded that the distinction is even factually cognizable—Defendants did not present any facts.  Rather, counsel offered the bare assertion that citizens in southwest Kansas possess an ideology that fundamentally differs from the citizens immediately to their east. Without more, the Court rejects this argument.  There is no evidence to suggest that citizens of the Dodge City division would evaluate the evidence presented at trial differently than citizens of the Wichita-Hutchinson division.[27]   Defendants have therefore failed to establish the third element as well.

Thus, this group is not defined by a limiting quality, no common thread or basic similarity in attitude, idea, or experience runs through the group, and there are no interests unique to the group that would not be adequately represented if the group is excluded from the

---

[27] *Cf. Raszkiewicz*, 169 F.3d at 466 (requiring specificity in any argument that an excluded group is "distinct").

jury selection process.  The only common quality shared by all members of the group is the fact that they all reside within the same 28-county geographic location, and there are no facts that would suggest this location is "profoundly culturally distinct."  This single, shared characteristic is not legally cognizable.[28]  Accordingly, the citizens of the Dodge City jury division are not a "distinctive group."

      2.     *Registered Republicans, those who voted for President Trump, and rural citizens are not "distinctive groups"*

As mentioned above, the "distinctive group" alleged to be excluded can be classified in other ways as well.  At times, Defendants seem to argue that the current jury selection plan discriminates against Republican voters, registered voters that voted for Donald Trump in the 2016 Presidential election, and rural citizens.  These characteristics were obviously considered above in determining whether the entire population of the Dodge City division was a "distinctive group."  But now, the Court will consider whether any of these groups, considered alone, can be considered "distinctive" in determining whether the current jury selection plan violates the fair-cross-section requirement.

      a.     Registered Republicans

Defendants submit that a greater percentage of voters in the Dodge City division are registered Republicans than the percentage of registered Republicans in the Wichita-Hutchinson division.  Therefore, Defendants argue, by excluding the Dodge City division from petit jury service, the jury selection plan discriminates against registered Republican voters.

---

[28] *See Green*, 435 F.3d at 1272 ("Neither does a person's geographic location place that person in a distinct group.").

Turning to the first factor, registered Republicans have one obvious limiting quality—the members of this group are all affiliated with the same political party.  Because this group has a definite composition, the first element is satisfied.

Whether a common thread or basic similarity in attitude, idea, or experience runs through the group is a more difficult issue.  At first glance, one would assume that members of the same political party share similar political beliefs.  In their motion, Defendants represented that Republicans differ from Democrats "regarding the appropriate size and power of the federal government and the individual rights of its citizens."[29]  At the hearing, however, Defendants seemed to argue that Republicans in the Dodge City division held ideologies and beliefs that were distinguishable from those held by Republicans in the Wichita-Hutchinson division.  This suggests that Republicans, as a group, may possess differing attitudes or ideas.  Regardless, Defendants offered no evidence that would allow the Court to make such a determination. Defendants merely provided a conclusory statement—that Republicans agree on "the appropriate size and power of the federal government and the individual rights of its citizens."  Thus, Defendants have not met their burden of proving the second element.[30]

Defendants are also unable to establish the third element—that a community of interests exists among members of the Republican Party such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.  Again, Defendants only offered vague conclusions about the shared interests of Republicans and how

---

[29] Doc. 188, at 8–9.

[30] *See Rose*, 443 U.S. at 590 (noting that the party alleging discrimination has the burden of proving the discrimination); *see also Green*, 435 F.3d at 1271 (declining to take judicial notice "that rural people who have a driver's license and are not registered to vote are 'anti-government' and, therefore, more friendly toward defendants.").

those interests would be represented on the jury.  Defendants represented in their motion that Republicans differ from Democrats "regarding the appropriate size and power of the federal government and the individual rights of its citizens."[31]  And, according to Defendants, "this case will require the jury to evaluate and weigh evidence regarding whether the alleged conduct constitutes the crimes charged or whether it was constitutionally protected speech, assembly, and petition, and/or the right to bear arms."[32]

Defendants appear to argue, then, that the exclusion of Republicans would make a difference in the assessment of the evidence by a jury.  While it is possible that members of one political party would assess evidence differently than members of another political party, Defendants have not proven so here.  Defendants' evidence only shows registered voters' political party affiliation; it does not speak to whether members of one political party would evaluate evidence differently than members of another political party.[33]  Nor have Defendants proven that Republican Party members' interests would not be adequately represented on the jury venire.[34]

Accordingly, Defendants have not shown that members of the Republican Party are a "distinctive group."  While this group may be defined by a limiting quality, Defendants have not

---

[31] Doc. 188, at 8–9.

[32] Doc. 188, at 9.

[33] *See Fay v. People of State of N.Y.*, 332 U.S. 261, 290 (1947) ("No significant difference in viewpoint between those allegedly excluded and those permitted to serve has been proved and nothing in our experience permits us to assume it.").

[34] Defendants neglected to address whether the members' interests could or could not be adequately represented if the members were excluded from the jury selection process.  However, it would seem that the interests of Republican Party members will be adequately represented under the current plan.  According to Defendants' statistics, 44.36% of those eligible to be summoned for jury service in the Wichita-Hutchinson division are Republicans.  Of the remaining groups, unaffiliated voters represent 32.7%, Democrats represent 22.18%, and Libertarians represent .76%.

shown that the group shares a basic similarity in attitude, or that there are interests unique to the group that would not be adequately represented if the group is excluded from the jury selection process.[35]

### b.    Those who voted for President Trump in the 2016 election

Defendants also submit that a greater percentage of voters in the Dodge City division voted for Donald Trump in the 2016 Presidential election than voters in the Wichita-Hutchinson division.  Therefore, Defendants argue, the jury selection plan discriminates against those who voted for President Trump.

Defendants are unable to establish any of the elements necessary to show that this group is "distinctive."  This group shared a single quality on one date in history—November 8, 2016— when the members of this group cast their ballots for the same presidential candidate.  "The only way to establish the present group, particularly in view of the absence of any scientific or expert evidence in this record, is by arbitrary fiat superimposed on intuition."[36]  Even assuming the Court can be flatly arbitrary, the Court cannot say that a grouping whose contours are rationally unsupportable is "distinctive."[37]

### c.    Rural citizens

Finally, Defendants argue that the current jury selection plan discriminates against rural voters.  As mentioned above, Defendants provided no evidence to suggest that this would be

---

[35] That is not to say that members of a political party would never be considered to be a "distinctive group," but that Defendants have simply failed to meet their burden here.  As one court has suggested, the outcome might have been different had Defendants shown, for instance, something specific about the purportedly shared values of Republicans as opposed to Democrats and unaffiliated voters which might have led to a different appraisal of the evidence at issue in this case.  *See Raszkiewicz*, 169 F.3d at 466.  *But see Lockhart*, 476 U.S. at 175 (stating that legally cognizable "distinctive groups" are "often historically disadvantaged").

[36] *Barber v. Ponte*, 772 F.2d 982, 998 (1st Cir. 1985).

[37] *Id.*

true.  Regardless, the courts that have confronted this issue are in agreement: the rural nature of a geographic area does not make its residents "distinct."[38]  Defendants were unable to cite any cases that have held a jury venire unconstitutional due to the rural or urban nature of an excluded segment of the population.  Accordingly, rural citizens are not a "distinctive group."

> 3. *Exclusion of the Dodge City division does not infringe upon Defendants' right to an impartial jury from a fair cross-section of the community*

In sum, the Court rejects Defendants' fair-cross-section claim because they have not established the first prong of the *Duren* test—that the excluded group is a distinctive part of the community.[39]  The Constitution's guarantee to an impartial jury drawn from a fair cross-section of the community is not violated when certain jurors are excluded simply due to their geographic location.[40]  Defendants must show that the group is "distinctive," and they are unable to do so here.  Neither the fact that the Dodge City division citizens tend to be more "conservative," nor the fact that they tend to reside in "more rural" communities makes those citizens "distinctive."  Even if those characteristics were legally cognizable, it is clear that those interests will still be represented in Defendants' jury venire.

---

[38] *See, e.g.*, *United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th Cir. 1985) ("[T]he fact that the Green Bay venire may have been more 'rural' than a Milwaukee venire might have been does not violate a defendant's right to a jury drawn from a cross-section of the community."); *Green*, 435 F.3d at 1271–72 ("[W]e cannot say that persons who live in rural counties and do not vote have a 'common thread in attitude' or that a common experience runs through the group."); *Conant*, 116 F. Supp. 2d at 1024 ("Indeed, every court that has looked at the question of whether the residents of a geographic area may constitute a 'distinctive' group for Sixth Amendment purposes solely due to the location of their residence has answered negatively.").

[39] While the parties largely neglected the remaining elements, it is worth noting that Defendants would not be able to satisfy the second element of the *Duren* test either.  Under the second element, Defendants would need to prove that the representation of the "distinctive group" in jury venires is not fair and reasonable in relation to the number of such persons in the community.  However, as discussed in more detail below, Defendants are not able to show disparity significant enough indicate a Sixth Amendment violation.  *See infra* Section II.B.2 (concluding that absolute disparity—the statistical underrepresentation of a group—under the current plan is at most 2.37%, which is insufficient to satisfy the second *Duren* element).

[40] *Green*, 435 F.3d at 1272; *Test*, 550 F.2d at 582 n.4.

The fair-cross-section requirement is a means of assuring "not a *representative* jury (which the Constitution does not demand), but an *impartial* one (which it does)."[41]   Under the current jury selection plan, Defendants' right to an impartial jury is guaranteed.   Accordingly, Defendants' constitutional challenge fails.

**B.     Defendants Do Not Have Standing to Make Equal Protection or Jury Act Challenges against the Plan as Applied to Dodge City Jury Division Citizens**

Defendants next argue that by excluding citizens of three jury divisions from petit jury service, the jury selection plan violates *those citizens'* rights under the Fifth and Sixth Amendments, as well as rights established under the Jury Act.[42]   As Defendant's constitutional rights have not been infringed upon, the issue becomes whether Defendants have standing to challenge the plan as applied to those citizens.   However, "standing," in this sense, does not refer to the constitutional requirements for a case to be heard (which is not in question).   Rather, "standing" refers to a prudential restriction on Defendants' ability to assert the constitutional and statutory rights of others, when their rights are not at issue.[43]

"In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."[44]   "This fundamental restriction on [the Court's] authority admits of certain, limited exceptions."[45]   The U.S. Supreme Court has recognized the right of litigants to bring challenges on behalf of excluded jurors,

---

[41] *Holland*, 493 U.S. at 480 (emphasis in original).

[42] *See* Doc. 188, at 13 ("Indeed, discrimination through systematic exclusion of a sector of otherwise qualified venire persons violates the Equal Protection Clause of the Fifth Amendment, the Sixth Amendment and the Jury Act.").

[43] *See Aid for Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006).

[44] *Powers v. Ohio*, 499 U.S. 400, 410 (1990)

[45] *Id.*

provided three important criteria are satisfied: (1) the litigant must have suffered an "injury in fact," thus giving him or her a "sufficiently concrete interest" in the outcome of the issue in dispute; (2) the litigant must have a close relation to the third party; and (3) there must exist some hindrance to the third party's ability to protect his or her own interests.[46]

### 1.    Defendants have not suffered an "injury in fact"

An example of "injury in fact" was provided in *Powers v. Ohio*.  In *Powers*, a white defendant challenged the prosecution's exclusion of black jurors from his petit jury through the use of peremptory strikes.  The defendant's claim rested on the third-party equal protection claims of the jurors excluded by the prosecution because of race.[47]  The Supreme Court determined that "[t]he discriminatory use of peremptory challenges by the prosecution causes a criminal defendant cognizable injury, and the defendant has a concrete interest in challenging the practice."[48]  The Court noted that this was "because racial discrimination in the selection of jurors 'casts doubt on the integrity of the judicial process,' and places the fairness of a criminal proceeding in doubt."[49]  This cloud of doubt deprives the defendant of the certainty that a verdict in his case "is given in accordance with the law by persons who are fair."[50]

In a similar case, *Campbell v. Louisiana*,[51] a white defendant sought to assert the equal protection rights of black persons not to be excluded from grand jury service on the basis of their

---

[46] *Id.* at 410–11 (internal citations omitted).

[47] *Id.* at 416.

[48] *Id.* at 411.

[49] *Id.* at 411 (quoting *Rose*, 443 U.S. at 556).

[50] *Id.* at 413.

[51] 523 U.S. 392 (1998).

race.  The Court, applying the *Powers* test, concluded that "the accused suffers a significant injury in fact when the composition of the grand jury is tainted by racial discrimination."[52] According to the Court, the integrity of the grand jury's decisions depends on the integrity of the process used to select the grand jurors.[53]  "If that process is infected with racial discrimination, doubt is cast over the fairness of all subsequent decisions."[54]

But here, Defendants have not suffered a cognizable injury.  Simply put, the exclusion of the three jury divisions that lack an active federal courthouse from petit jury service is not comparable to the systematic exclusion of black jurors.  The current plan has no effect on the integrity or the public perception of the court system.  It does not discriminate on the basis of race or any other legally cognizable characteristic that speaks to the core of one's identity.  This is not a case such as *Powers*, where the prosecution used peremptory strikes, in open court, to exclude jurors simply because they were black.  Of course the jurors who witnessed such blatant racial discrimination would question the fairness of the criminal proceeding, calling into question those jurors' eventual verdict.  However, there is no reason to believe that prospective jurors in Defendants' upcoming trial will notice that citizens of, say, Morton County[55] are not represented on the jury venire and question the fairness of the criminal proceeding.  Accordingly, Defendants are unable to establish an "injury in fact" as articulated in *Powers* and *Campbell.*

---

[52] *Id.* at 398.

[53] *Id.* at 399.

[54] *Id.*

[55] Morton County, located in the very southwestern corner of Kansas, falls within the Dodge City jury division.  The Court notes that from the county seat of Morton County, Elkhart, it is a 267.2 mile drive to Wichita via US-54E.  The drive would take approximately four and one-half hours.

Of course, Defendants are not required to rely on *Powers* and *Campbell* to prove "injury in fact," so long as Defendants show they have a "sufficiently concrete interest" in the outcome of the issue in dispute.[56]   Despite devoting an entire section in their motion to standing, Defendants have not been able to definitively state what such an injury might be.   That said, the Court is aware of Defendants' numerous allusions to the "fact" that citizens from the Dodge City division hold political ideologies distinct from citizens of the other divisions.   Or, at the very least, those citizens are more likely to identify as politically conservative than citizens of the other divisions.   Based on this premise, the Court assumes Defendants intended to argue that they are harmed because the prospective jury pool will contain fewer jurors that hold political ideologies Defendants believe would be favorable to their defense.

The Court rejects this argument.   For one, it is impossible to ascertain the "political ideology" or "belief system" that Defendants contend is so important.   The only evidence presented by Defendants concerns political affiliation amongst registered voters and the votes for each candidate in the 2016 Presidential election.   The Court is unable to derive from these statistics the "body of doctrine, myth, belief, etc., that guides" these groups.[57]   There are countless different reasons one may choose to register as a Republican, Democrat, Libertarian, or independent.   And there are just as many reasons to vote (or decline to vote) for a particular candidate.   Without being able to identify and quantify these ideologies, Defendants cannot show, with any degree of certainty, that a specific belief system or ideology will not be

---

[56] *Powers*, 499 U.S. at 410–11.

[57] *Ideology*, Dictionary.com, *available at* http://www.dictionary.com/browse/ideology (last visited January 10, 2018).

adequately represented on the jury venire.[58]  Therefore, this argument also fails to prove "injury in fact."

The Constitution requires that Defendants be tried by a jury from a fair cross-section of the community.  As the Court held in Section II.A., the current plan to summon jurors only from the Wichita-Hutchinson district ensures that Defendants will be afforded that right.  Whether the jury selection plan infringes upon the rights of the citizens of the three excluded divisions is an entirely separate issue.  And Defendants have been unable to establish a nexus between the two. Defendants therefore do not have a "sufficiently concrete interest" in challenging the current jury selection plan as applied to the citizens of the Dodge City, Fort Scott, and Salina jury divisions.

>    2.    *Defendants do not have a close relation to the third party*

In *Powers*, the Court held that the defendant had a close relation to the jurors because of the nature of voir dire, which "permits a party to establish a relation, if not a bond of trust, with the jurors . . . [that] continues throughout the entire trial and may in some cases extend to the sentencing as well."[59]  The Court identified two common interests between the defendant and the excluded jurors: (1) "[b]oth the excluded juror and the criminal defendant have a common interest in eliminating racial discrimination from the courtroom," and (2) the defendant has a vital interest in asserting the excluded jurors' rights because his conviction may be overturned as

---

[58] Even if Defendants could make such a showing, no Court has ever held that the ideological composition of a jury venire, without more, can violate the Constitution.

[59] *Powers*, 499 U.S. at 413.

a result.[60]  The *Campbell* Court acknowledged the same shared interests between defendants and excluded grand jurors.[61]

However, those two common interests are not present here.  Defendants and the excluded jurors do not have a common interest in eliminating racial discrimination from the courtroom because jury selection plan does not discriminate on the basis of race.   And even though Defendants assert that the current plan discriminates on the basis of political party, the Court is not so convinced.  Currently, the plan calls for jurors to be summoned at random from the official lists of registered voters in each of the counties comprising the Wichita-Hutchinson division.[62]   According to Defendants' statistics, 44.36% of these voters are registered Republicans, while 22.18% are registered Democrats.[63]   To prevent political discrimination, Defendants argue, the Court should summon jurors from both the Wichita-Hutchinson and Dodge City divisions.  Under Defendants' proposed plan, 46.73% of the prospective jury pool would be registered Republicans, compared to 21.18% registered Democrats.[64]

In other words, Republicans are slightly unrepresented under the current plan.  "[A]bsolute disparity measures the difference between the percentage of a group in the general population and its percentage in the qualified wheel . . . ."[65]  It is determined by subtracting the percentage of Republicans in the jury pool (here, 44.36%) from the percentage of Republicans in

---

[60] *Id.* at 413–14.

[61] *Campbell*, 523 U.S. at 400.

[62] D. Kan. Rule 38.1(d).

[63] The statistics show that there are 445,434 total registered voters in the Wichita-Hutchinson division.  Of those, 197,579 (44.36%) are registered Republicans.  98,815 (22.18%) are registered Democrats.

[64] By including both divisions, the total number of registered voters becomes 559,330.  Of that total, 261,402 (46.73%) are registered Republicans.  118,487 (21.18%) are registered Democrats.

[65] *United States v. Orange*, 447 F.3d 792, 798 (10th Cir. 2006).

the local, jury-eligible population (here, 46.73%).[66]  By an absolute disparity measure, therefore, Republicans will be underrepresented by only 2.37%.  This is entirely insufficient to show political discrimination.[67]

Additionally, there is no risk that a conviction, if obtained, would be reversed if the excluded jurors' rights are not asserted in this case.  As the Court held above, the current plan, which excludes the Dodge City division from petit jury service, does not infringe upon Defendants' rights.  The issue of whether or not citizens from southwest Kansas have had their rights violated would have no bearing on the soundness of a conviction, if obtained.  Because Defendants' rights are not implicated, Defendants have no greater interest in whether citizens in the Dodge City division have been denied their right to serve on a jury than Defendants have an interest in whether citizens of a different state have been denied the right to serve on a jury.  Accordingly, Defendants do not have a close relation to the citizens excluded from petit jury service and are unable to satisfy the second element to invoke standing.

Because Defendants are unable to satisfy either of the first two elements, the Court need not reach the issue of whether the citizens excluded from petit jury service are likely or able to assert their own rights.

*3.     Conclusion*

The plan ensures that Defendants will be tried by a jury from a fair cross-section of the community as required by the Sixth Amendment and the Jury Act.  Although certain citizens are

---

[66] *Berghuis v. Smith*, 559 U.S. 314, 323 (2010).

[67] *See Orange*, 447 F.3d at 799 (concluding that 3.57% absolute disparity was insufficient to establish a prima facie case that the distinct group's representation was not fair and reasonable); *Yazzie*, 660 F.2d at 427 (upholding selection mechanism with 4.29% absolute disparity); *United States v. Gault*, 141 F.3d 1399, 1402–03 (10th Cir. 1998) (concluding that 7% absolute disparity was insufficient to establish a constitutional violation).

excluded from petit jury service, Defendants have not shown how this harms them or that they have a sufficiently close relationship to challenge the plan on those citizens' behalf. Accordingly, it would not be proper for the Court to address the issue of whether those citizens' rights have, in fact, been violated.[68]

This is especially true where "the applicable constitutional questions are ill-defined and speculative."[69]  Such is the case here.  Defendants assert that denying the citizens of some jury divisions the opportunity to serve as petit jurors violates those citizens' equal protection and Jury Act rights.  However, no court has ever held that every eligible citizen must be guaranteed the opportunity to serve as a petit juror.[70]  Moreover, neither the Supreme Court nor the Tenth Circuit has ever implicated equal protection to hold that the right to serve on a jury is a fundamental right.[71]  Resolution of this issue, then, would require the Court to evaluate arguments not based on precedent to implicate the rights of citizens that are not involved in this case.  The Court declines to do so.

---

[68] *Singleton v. Wulff*, 428 U.S. 106, 113–14 (1976) (plurality opinion of Blackmun, J.) ("[T]he courts should not adjudicate [the rights of third persons] . . . unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not.").  It very well may be that citizens of the Dodge City division do not want to assert their right to serve as jurors for trials in federal court.  Some citizens in the Dodge City division would be required to drive more than 250 miles from their homes to the federal courthouse.  Such a drive would be rather inconvenient for a juror sitting on a trial scheduled to last an entire month, as is the case here.

[69] *Craig v. Boren*, 429 U.S. 190, 193 (1976) (holding that rules against asserting the rights of others are "designed to minimize unwarranted intervention into controversies where the applicable constitutional questions are ill-defined and speculative.").

[70] *Cf. Ruthenberg v. United States*, 245 U.S. 480, 482 (1918) (concluding that the "plain text of the Sixth Amendment" and "continuous legislative and judicial practice from the beginning" permits jurors to be drawn from a single division as opposed to requiring jurors be drawn from the entire district).

[71] *See Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 619 (1991) (classifying the denial of the right to serve as a juror as the denial of an "honor and privilege," without describing the right as fundamental); *Conant*, 116 F. Supp. 2d at 1020 ("No court that has considered the question of whether being eligible for jury service is a constitutional right has answered in the affirmative.").

### III.    Conclusion

The demographic differences between the Dodge City and the Wichita-Hutchinson divisions are not legally cognizable and will not reflect adversely on the ability of the jury panel to perform its jury function with impartiality, either in actuality or in appearance.[72]   Accordingly, the jury selection procedure employed by the District of Kansas does not violate Defendants' right to a jury trial before a fair cross-section of the community, as guaranteed by the Sixth Amendment and the Jury Act.

Furthermore, Defendants lack standing to challenge the jury selection plan on behalf of citizens residing within the Dodge City, Fort Scott, and Salina jury divisions.  "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties."[73]  "This fundamental restriction on [the Court's] authority admits of certain, limited exceptions."[74]  But Defendants have not shown that this case fits within one of those exceptions.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Order to Have Prospective Jurors Summoned from Multiple Jury Divisions (Doc. 188) is hereby **DENIED.**

**IT IS SO ORDERED.**

Dated this 17th day of January, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[72] *See Zicarelli*, 633 F.2d at 320.

[73] *Powers*, 499 U.S. at 410.

[74] *Id.*