**IN THE FEDERAL DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CR-14101-EFM |
| | ) | |
| GAVIN WAYNE WRIGHT, | ) | |
| *Defendant*. | ) | |
| _____ | ) | |

## MOTION FOR JUDGMENT OF ACQUITTAL
### IN ACCORDANEC WITH FED. R. CRIM. P. 29

COMES NOW the defendant, Gavin Wayne Wright, by and through his appointed

counsel Kari S. Schmidt and Tyler J. Emerson of Conlee Schmidt & Emerson, LLP, and moves

this Court to enter a judgment of acquittal as to every count of the Indictment against him in this

case pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure.

### ARGUMENT

Rule 29(a) states that "[a]fter the government closes its evidence or after the close of all

the evidence, the court on the defendant's motion must enter a judgment of acquittal of any

offense for which the evidence is insufficient to sustain a conviction." The standard for whether

evidence is sufficient is whether when viewing the evidence in the light most favorable to the

government a rational jury could find the defendant guilty beyond a reasonable doubt. *Jackson v.

Virginia*, 334 U.S. 307, 319 (1979).

**I.      As to all charges generally.**

As a general matter, the United States has failed to present sufficient proof from which

any rational juror could conclude beyond a reasonable doubt that Mr. Wright is guilty on each

and every count. Mr. Wright hereby expressly reserves the right to argue sufficiency of the

evidence on these and all other grounds in accordance with Rule 29(a), or any other rule of law, and does not waive or limit such right by arguing the specific grounds below at this time.

## II.     Count 5.

Mr. Wright is charged in Count Five (formerly Count Six in the Second Superseding Indictment) with knowingly and willfully making materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Bureau of Investigation ("FBI"). Specifically, in an investigation of an offense allegedly involving domestic terrorism, Mr. Wright is charged with making the following false statements to a Special Agent of the FBI:

(1)     that he did not know anything about co-defendant Curtis Allen manufacturing explosive devices at the offices of G&G Homes;

(2)     that he had no knowledge of any explosives being located on the premises of G&G Homes at the time he made such statement;

(3)     that he was not a member of a militia;

(4)     that Allen had not invited Mr. Wright to a meeting of the Kansas Security Force ("KSF"); and

(5)     that he had provided the FBI with all of his personal knowledge about Allen during an interview,

all in violation of 18 U.S.C. § 1001.

### A.     None of the statements is "material," and thus even assuming that the statements are untrue, no rational jury could find Mr. Wright guilty of the offense charged against him in Count Five of the Indictment.

18 U.S.C. § 1001(a)(2) makes it a crime to "knowingly and willfully make[] any materially false, fictitious, or fraudulent statement or representation" in "any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States." The Tenth Circuit holds that in order to obtain a conviction for making a false statement

in violation of 18 U.S.C. § 1001(a)(2), the Government must prove all of the following beyond a reasonable doubt "1) that the defendant made a statement, 2) that the statement was false and the defendant *knew* it was false, 3) the statement was made knowingly and willfully, 4) the statement was within the jurisdiction of the federal agency, and 5) the statement was material." *United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992). For a statement to be *materially* false, it "must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Gaudin*, 515 U.S. 506, 509 (1995); *also Maslenjak v. United States*, 137 S. Ct. 1918, 1932 (2017)("an illegal false statement which has a 'natural tendency to influence' the *outcome*" of a decisionmaking process).

In this case, the totality of the evidence clearly demonstrates that there was *zero* tendency to influence the outcome of the investigation in this case. The only witness to testify to whether there was a change in the outcome of the investigation, or in its pursuit, after Mr. Wright's interview on October 12 was Agent Piland. And Agent Piland testified that he did not know, and could not comment on that. There is simply no evidence at all that Mr. Wright's statements – even assuming, *arguendo*, that they were "knowingly and willfully" false – had *any* tendency to influence the outcome of the FBI's processes in this case. The Government failed to offer any evidence bearing on the materiality of the statements. Because there is *zero* evidence of materiality, no rational jury could find Mr. Wright guilty beyond a reasonable doubt of the offense charged in Count Five of the indictment by any of the means articulated.

**B.     Statement 1: That Mr. Wright knew anything about co-defendant Allen manufacturing explosive devices at the offices of G&G Homes.**

No rational juror can find beyond a reasonable doubt that Mr. Wright's statements regarding co-defendant Allen constituted knowing and willful false statements. At trial, the

Government offered through witness Special Agent Adam Piland of the Kansas Bureau of

Investigation ("KBI") Exhibit 138, which was an audio-video recording of Mr. Wright's

voluntary interview with Special Agent Robin Smith of the FBI and Special Agent Piland on the

morning of October 12, 2016. After playing the recording for the jury, Agent Piland testified that

Special Agent Smith specifically asked Mr. Wright "whether he knew anything about

manufacturing explosives at G&G," and that Mr. Wright "said that he was not aware of any."

Agent Piland's testimony, however, is a total mischaracterization of the words Mr. Wright

responded to. In the recording published to the jury only moments earlier, the following

exchange is clearly heard between Special Agent Smith and Mr. Wright:

| | |
|---|---|
| Smith: | And you don't have any idea why we need a search warrant for your business office? |
| Wright: | No. Other than what the cop said last night. |
| Smith: | Which is? |
| Wright: | He said that he was -- his -- his wife told them he was making bombs is what the cop told me. And I go, "not in my office he's not." |
| Smith: | What do you know about that? |
| Wright: | What do I know about what? Just what I told you. The cop told me. |
| Smith: | Do you know anything additional about Curtis and the bombs? |
| Wright: | No, I -- No. I don't have a clue. |

At no time during the exchange the jury heard in the video does Special Agent Smith ask

Mr. Wright about Allen making bombs *at G&G Homes*. And to follow up, Agent Smith simply

asks whether Mr. Wright knows anything "about Curtis and the bombs," without reference to

either (i) manufacturing explosives, or (ii) G&G Homes offices. And, in fact, during cross-

examination, Special Agent Piland specifically testified that he did not actually recall Mr. Wright

saying anything about the manufacturing of explosives. Given Agent Piland's recanting of his own testimony, it is clear that Mr. Wright never made a false statement about Allen manufacturing explosives *at all*, let alone at G&G.

Furthermore, Mr. Wright's statement "not in my office he's not" does not rise to the level of a false statement in the totality of the evidence received by the Court to this point. Lula Harris testified earlier that Mr. Wright was variously making explosives *with* Allen in G&G, then she changed her testimony to state that Allen was making explosives in G&G while Mr. Wright was in the room, and then she changed her testimony a third time in which she stated that at the time she allegedly saw the explosives cooking at G&G that Mr. Wright was in his office with the door shut. In Exhibit 138, Mr. Wright clearly states that he is gone from G&G most of the time, setting homes and checking on cranes and that he does not "micromanage" Allen. The Government has proffered no evidence that this is untrue. And Dr. Barrow testified that fresh HMTD does not develop an odor until it begins to decompose, and that at the time he received the test sample in Quantico, Virginia that it was still relatively fresh. The only logical inference a rational jury can make, then, is that the sample found at G&G had no odor. Given that it is unrefuted that Mr. Wright was often gone from G&G, that there is no way to say from the totality of the circumstances that he was anywhere *but* his office at G&G with the door shut on the day Allen was allegedly making something on the counter, and that fresh HMTD has no odor, a rational jury cannot say – beyond a reasonable doubt – that Mr. Wright *knew* that explosives were being manufactured *at* G&G, and therefore any statements made by him to the contrary were knowingly false.

### C.      Statement 2: That Mr. Wright had no knowledge of any explosives being located on the premises of G&G Homes.

This statement was made in response to an ambiguous question on the part of Agent

Smith. Specifically, the following exchange took place in Exhibit 138:

| | |
|---|---|
| Smith: | You just don't want to tell me. So what is-- so what questions do you have for me-- |
| Wright: | What do you mean I don't want to tell you? |
| Smith: | --that you think you need to know from us before we do a search warrant and find explosives at your place of business. |
| Wright: | If they are, I don't have a clue about it. |
| Smith: | Just offered you an opportunity. I didn't ask you a question. |
| Wright: | I understand what you did, but I am not hiding anything. |

In this case, the evidence does not point beyond a reasonable doubt to whether Mr. Wright's

statement is one that relates to knowledge being located on the premises of G&G Homes *at the

time he made the statement* or whether his statements relate back to his knowledge whether

explosives or bombs were located on the premises of G&G Homes *ever*. A rational jury cannot

find beyond a reasonable doubt that Mr. Wright had actual knowledge that what has been

described as the "detonator" was – in fact – present at G&G Homes at the time he made the

statement. There has been testimony that other than the detonator, there were no other

"explosives" found at G&G Homes on October 12, 2016. It was found in a drawer in a common

area where anybody could have placed it. Fresh HMTD does not have an odor. And the fact

remains unrefuted that Mr. Wright was out of the G&G Homes offices very often to set homes.

The only evidence *placing* explosives inside G&G Homes was Lula Harris' testimony

which varied from Mr. Wright participating in the cooking of the unknown substance, to Mr.

Wright being present in the room but not participating in the cooking of the unknown substance,

to Mr. Wright being in his office with the door shut and taking a phone call during the cooking of the unknown substance several days prior to the search of G&G offices. There is no credible evidence that Mr. Wright *knew* that explosives were present in his office on October 12, 2016 since there is no credible evidence that he was in a physical position to *see* the detonator, and since there is no credible evidence that he could *smell* the detonator (fresh HMTD gives no odor, as testified to by Dr. Barrow) and there is no evidence that any person ever apprised Mr. Wright that the detonator was then present at G&G. Therefore, no rational jury could find beyond a reasonable doubt that he made such a statement *knowing* it to be false.

### D.       Statement 3: That Mr. Wright was not a member of a militia.

The totality of the evidence at this point does not prove that Mr. Wright was ever a member of any militia. Dan Day testified that Mr. Wright was a member of a militia. However, Dan Day never testified to evidence on which he based his opinion that Mr. Wright was a member of a militia. And Dan Day's testimony clearly bears out a tendency to manufacture opinions of other people without a basis in reality. The Government never objected to Ms. Schmidt's assertion that it was "preposterous" when Day testified that Mr. Wright must have believed there was a "bug" on the phone the evening of October 11 without any evidence on which to base his statement about a listening device.

The only credible evidence on which the jury could decide whether Mr. Wright was – in fact – a member of a militia came, instead, from Brody Benson. Benson testified the people were not members of the militia until they were "patched in." And in this case, both KSF and III% patches were located at Curtis Allen's home and Patrick Stein's home. Furthermore, KSF calling cards were found bearing the name and phone number of Curtis Allen. However, Special Agent Miller testified specifically that no militia patches or calling cards were found at G&G. A Liberal

Police Department Deputy specifically testified that no militia patches or calling cards were found in Mr. Wright's truck. And Agent Lang specifically testified that no militia patches or calling cards were found at Mr. Wright's residence. Additionally, in Exhibit 138, Special Agent Smith accuses Mr. Wright of "digging that hold of untruthfulness" after Mr. Wright states that he is not a member of a militia. In response, Mr. Wright and Agent Smith have the following exchange:

> Wright:   I was *trying to get into* militia with LRC -- the Liberty Restoration Committee with Earnest Lee.
>
> Smith:    Now, maybe we are getting somewhere. Who is Earnest Lee?
>
> Wright:   He is a constitutionalist.
>
> Smith:    What is the Liberty Restoration Committee?
>
> Wright:   It's a constitutional movement.

Mr. Wright never attempts to distance himself from the militia. And, in fact, he states plainly to Agent Smith that he was trying to get *into* militia organizations. However, it is a logical impossibility for a person to *become* a member (the assumption being that they are not presently a member), if they are *already* a member. Additionally, Mr. Wright states plainly that the LRC is a constitutional movement. He never states that the LRC is, in and of itself, a discrete organization such as a militia might be. Furthermore, the Government has proffered no evidence and has elicited no testimony that the LRC is, in fact, a militia (a discrete organization) as opposed to a political movement. Even in light most favorable to the Government, no rational jury can find beyond a reasonable doubt that Mr. Wright was – in fact – a member of a militia at the time he made this statement.

**E.      Statement 4: That Allen had not invited Mr. Wright to a meeting of the KSF.**

On October 12, Agent Smith and Mr. Wright have the following exchange clearly heard in Exhibit 138:

> Smith:      He never invited you to a meeting with a group called Kansas Security Force?
>
> Wright:      No. He's --
>
> Smith:      You're not a member of a militia?

In the first instance, Agent Smith asks Mr. Wright the question whether Allen invited him to a meeting. However, after Wright says "no," it is clear that he is about to explain his response to Agent Smith. However, instead of allowing Mr. Wright to clearly articulate his response, Agent Smith immediately interrupts Mr. Wright. It ought to go without saying that when a special agent of the FBI cannot even be bothered to allow a person to explain their response (such as if Mr. Wright is interpreting Agent Smith's question in a reasonable way, even if Agent Smith did not personally intend his question to be inferred in such a way), then it cannot be said that Mr. Wright's denial was knowing or even a denial. No rational jury could find Mr. Wright's denial to be false beyond a reasonable doubt without understanding whatever Mr. Wright was about to say to clarify when Agent Smith abruptly cut him off. Furthermore, while not directly related to this question, Agent Smith appears to attempt to fix his fatal error:

> Smith:      And who put you on to this [the LRC]? It was Curtis, wasn't it?
>
> Wright:      No, it's actually the whole-- everybody in the group.

The evidence shows that Mr. Wright believes he was invited by people in a group that may have *included* Allen, but never Allen individually. Agent Smith did not feel it necessary to identify other group members during the interview. Instead of asking questions reasonably designed to elicit the types of responses Agent Smith desired, Agent Smith instead devolved into

accusations against Mr. Wright. But Agent Smith's failure to ask a "good" and appropriately-tailored question cannot be held against Mr. Wright when he was not given the opportunity to provide a response to the question asked, and when Mr. Wright reasonably interpreted what *he* believed Agent Smith was asking while Agent Smith failed to follow up and make sure they were both actually on the same page. No rational jury could find beyond a reasonable doubt that Mr. Wright "knowingly and willfully" made this false statement when his unfinished response – interrupted by Agent Smith – would have cleared up the confusion that was palpable in the room which Agent Piland testified to.

### F.      Statement 5: That Mr. Wright had provided the FBI with all of his personal knowledge about Allen obtained over 18 months during a 24-minute interview.

In the first instance, this is an unfair question that due process would forbid. Suggesting that a person makes a false statement if he says that he "provided the FBI with all of his personal knowledge" about another person during a 24-minute interview is simply disingenuous. Mr. Wright testified that he personally knew Allen going back a year and a half, "give or take," prior to the interview on October 12, 2016. Mr. Wright answered the questions asked of him regarding Mr. Allen and his employment, stating that he had been working for Mr. Wright for five to six weeks prior to October 12. When Agent Smith asked "So, you don't know anything else about Curtis Allen," and Mr. Wright responded "No, not personally," Agent Smith failed to follow up with any number of reasonable questions. Agent Smith easily could have followed up with any number of leading questions. This is a "catch-all" question that violates due process because a fair interpretation of the question would suggest that Mr. Wright made a false statement if he failed to recall every interaction, in detail, he had with Curtis Allen during the roughly 18 months, or 72 weeks, or 504 days, or 12,096 hours or 725,760 minutes (give or take) that he

knew, was acquainted with, had spent time with, had spoken to Curtis Allen at the time of the interview. As applied, Agent Smith's questions were ambiguous (*i.e.* capable of having more than one reasonable interpretation), and the Government's evidence has demonstrated that Mr. Wright's responses were reasonably calculated to respond to *a* reasonable interpretation of Agent Smith's questions. Because Agent Smith failed to clarify his questions, and because Mr. Wright's responses truthfully replied to *any* reasonable interpretation of Agent Smith's ambiguous questions, no rational juror can be expected to find beyond a reasonable doubt that Mr. Wright could do that (or that he should be expected to), and so this is an overly-broad question Agent Smith asked.

Additionally, Mr. Wright does his utter best to answer the questions non-questions that Agent Smith insisted on using. In Exhibit 138, when Agent Smith asks the question "[s]o what else is there to know about you guys' relationship," Mr. Wright – exasperated and with a questioning tone in his voice, as though to obtain some clarification from Agent Smith, says, "I don't have a clue. *Business?*" Agent Smith then impliedly accuses Mr. Wright of being a liar because Mr. Wright is not a mind-reader:

> Smith:      Why do I need a search warrant for your office? My legal reasons? What am I looking for?
>
> Wright:     I don't have a clue.
>
> Smith:      Not even the slightest?
>
> Wright:     No. Not even the slightest.
>
> Smith:      Back to that respect issue...

Smith later then asks "[s]o you don't know anything else about Curtis Allen?" to which Mr. Wright replied "No, *not personally*," a statement which can reasonably be inferred by a rational juror to mean that Mr. Wright may have had what Mr. Wright considered *non*-personal

knowledge about Curtis Allen. However, Agent Smith's failure to follow up on this opening does not make what Mr. Wright *did* say a "knowing and willful" false statement in and of itself.

And to clarify, Agent Piland testified that at this point in the interview captured and published in Exhibit 138, there had been *no* discussion of anything *other than* Curtis Allen and Lula Harris' altercation the night before, how long Allen had worked for Mr. Wright, or anything *other than* what had happened on the afternoon and evening of October 11. Later in the conversation, Agent Smith tells Mr. Wright "Gavin, don't lie to me," and the following exchange takes place:

> Smith:    Then let's back this up and let's start from square one. How exactly do you know Curtis Allen?
>
> Wright:    He put a security system into my office. That's where I met him.
>
> Smith:    And you said you have known him about an hour-- year and a half. Give or take.
>
> Wright:    About give or take. Yeah.

At no time does Wright *deny* knowing Allen. At no time does Wright *deny* any actual question with a discrete response. Even Smith's question, "how exactly do you know Curtis Allen" could have been interpreted by a rational jury (and Mr. Wright) in any number or ways:

How did you *meet* Curtis Allen?

Through what organizations or people are you *acquainted* with Curtis Allen?

How *long* have you known Curtis Allen?

How *well* do you know Curtis Allen?

Agent Smith's questions are simply so overly-broad and provide no notice to Mr. Wright about what type of response Smith is actually wanting (how long, how well, when did you meet, what were the circumstances of you meeting, etc.). Because Agent Smith's questions were so

ambiguous, and because Mr. Wright's responses were reasonable to at least one reasonable interpretation of Agent Smith's questions, no rational jury could find Mr. Wright guilty beyond a reasonable doubt of making a false statement on these matters.

### III.    Counts 1 and 2.

There is insufficient evidence for a rational jury to find beyond a reasonable doubt that Mr. Wright ever actually agreed with others to manufacture or use a weapon of mass destruction, or to commit civil rights violations on the basis of race, ethnicity or national origin. While he participated in conversations and language with others, the only evidence suggesting that he did anything beyond "feigning acquiescence" came from Dan Day. *See United States v. LaBossiere*, 13 U.S.C.M.A. 337, 340 (1962); *also United States v. Dumas*, 688 F.2d 84, 86 (10th Cir. 1982)(conspiracy requires a "meeting of the minds"). However, Dan Day never testified that Mr. Wright *agreed* with his co-defendants to do these things, but merely testified that it was his impression that Mr. Wright was "serious" because Mr. Wright said certain words and participated in certain conversations. However, Dan Day testified to using the *same* words and participating in the *same* conversations, and so no rational juror can find beyond a reasonable doubt from the totality of the evidence that Mr. Wright *actually* acquiesced, but merely that he engaged in what *appeared to be* acquiescence – the same as Dan Day. Mr. Wright's statements in Exhibits 1107 and 1108 both bear this out, as well, and tend to mitigate any finding of acquiescence or even knowledge of any alleged criminal purpose of his co-defendants.

Respectfully submitted,

/s/ Kari S. Schmidt
Kari S. Schmidt, #11524
/s/ Tyler J. Emerson
Tyler J. Emerson, #26006
Conlee Schmidt & Emerson, LLP

200 W. Douglas, Suite 300
Wichita, Kansas 67202
T: 316-264-3300
F: 316-264-3423
E: karis@fcse.net
E: tyler@fcse.net
*Attorneys for Gavin Wayne Wright*

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above MOTION FOR JUDGMENT
OF ACQUITTAL was filed and served electronically pursuant to the CM/ECF system on April
10, 2018 on all counsel of record.

/s/ Kari S. Schmidt
Kari S. Schmidt

14