# UNITED STATES DISTRICT COURT
## District of Kansas

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                           Case No.  <u>16-CR-10141-03-EFM</u>

CURTIS WAYNE ALLEN *et al*.,

        Defendants.

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS COUNT 2 FOR CONSTRUCTIVE AMENDMENT, OR IN THE ALTERNATIVE, TO CONFINE FURTHER EVIDENCE, INSTRUCTIONS, AND ARGUMENTS (Re: Docket 371)

APPEARS NOW the United States of America, by and through Stephen McAllister, United States Attorney for the District of Kansas; Anthony W. Mattivi, Assistant United States Attorney for the District; and Risa Berkower and Mary J. Hahn, Trial Attorneys, Criminal Section of DOJ's Civil Rights Division, and respectfully offers the following response in opposition to the defendants' Motion to Dismiss Count 2 for Constructive Amendment, or in the Alternative, to Confine Further Evidence, Instructions, and Arguments to the Conspiracy Charged.

Defendants' claims that Count 2 failed to provide sufficient notice that the civil rights conspiracy encompasses the defendants' plans to use means other than a weapon of mass

destruction and to attack landlords ignores the very first paragraph of the Second Superseding Indictment, which expressly defines the phrase "residents of 312 West Mary Street" as the "residents, tenants, *and owners* of an apartment complex located at 312 West Mary Street, Garden City, Kansas, *as well as guests of the residents, tenants, and owners* at the complex."  (Superseding Indictment, Introductory Allegation, ECF No. 89.)  This introductory paragraph explicitly states that this definition applies to the entire indictment and clearly encompasses more than the tenants living at 312 West Mary Street.  *Id.*  Moreover, contrary to the defendants' claims, nothing in the language of Count 2 restricts the means by which the defendants sought to effectuate the goal of the civil rights conspiracy—let alone limiting it to the use of a weapon of mass destruction.

**I.      Relevant Procedural History and Factual Background**

On March 15, 2017, the grand jury returned a Second Superseding Indictment.  *See* Second Superseding Indictment, ECF 89 (filed on March 16, 2017).  The first paragraph of the Second Superseding Indictment, entitled "Introductory Allegation," reads:

> At all times relevant to this Second Superseding Indictment, the term "residents of 312 West Mary Street" refers to the residents, tenants, and *owners* of an apartment complex located at 312 West Mary Street, Garden City, Kansas, as well as to guests of the residents, tenants, *and owners* at the complex.

*Id.*, Introductory Allegation (emphasis added).  The definition of the phrase "residents of 312 West Mary Street" twice expressly incorporates the owners of the apartment complex.

Count 2 of the Second Superseding Indictment incorporates the phrase "residents of 312 West Mary Street" and reads:

> Beginning on an unknown date, prior to approximately February 2016 and continuing until on or about October 14, 2016, in the District of Kansas, and elsewhere, the defendants . . . knowingly and willfully combined, conspired, and agreed with each other and with others to injure, oppress, threaten, and intimidate the residents of 312 West Mary Street in the free exercise and enjoyment of rights

and privileges secured to them by the laws and Constitution of the United States;
that is, the right to sell, purchase, rent, and occupy a dwelling without injury,
intimidation, and interference because of race, national origin, and religion.

This civil rights conspiracy is directed at the defendants' plans to ensure that black, Muslim

Somalis would be denied the right to live at 312 West Mary Street because of their race, national

origin, or religion. Nothing in the language of Count 2 references a weapon of mass destruction or

otherwise limits the means by which the defendants sought to interfere with the residents' rights to

equal housing opportunities "without injury, intimidation, or interference."

At the first motions hearing, the defense objected to various clips of recorded conversations

among the defendants in which the defendants described their plans to ensure, through a variety of

mechanisms, that Muslims and Somalis would not be able to live in Garden City. Because of

certain comments made by defense counsel during that first motions hearing about the admissibility

of this type of evidence, the government filed a brief outlining its position on various evidentiary

issues that it expected would arise during the course of the trial. (Govt. Bench Brief Regarding the

Conspiracy Charged in Count 2, ECF 291 (Mar. 12, 2018).)

Importantly, this evidence was linked specifically to the defendants' animus towards

Muslims and Somalis and to their plans to interfere with the right of those individuals to live

wherever they choose, including at 312 West Mary Street. For example, the defendants' plans to

intimidate the landlord of 312 West Mary Street were not motivated on any animus towards him

personally. Rather, the defendants themselves explicitly stated their plans to intimidate him were

motivated by their desire to ensure that he would stop renting to Muslims:

STEIN: We would send a message.
WRIGHT: But if you scared the fucking living crap out of him,
S-73282: Yeah, you could send a message coming after him.
WRIGHT: You scared the living shit out of him, *he's gonna go fuck, take, get them*

*motherfuckers out of our property.*

Govt. Ex. 16-UU (emphasis added).

Notably, despite being on notice about the scope of Count 2 since the filing of the Second Superseding Indictment in March 2017, and then again being reminded in the weeks leading up to trial that the government intended to put forward evidence of a variety of means by which the defendants sought to injure, intimidate, or interfere with the rights of black, Muslim Somalis to live at 312 West Mary Street, the defendants made the strategic choice not to raise the claim that Count 2 should be dismissed until after the government rested its case.

**II.     Argument**

**A.  No Constructive Amendment Occurred**

The defense bears a heavy burden to show that an indictment should be dismissed because they claim that a constructive amendment has occurred.  *See United States v. Sells*, 477 F.3d 1226, 1238 (10th Cir. 2007).  As the Tenth Circuit has repeatedly held, not every variation from an indictment constitutes a constructive amendment that is fatal to an indictment.  *See id.* (distinguishing between a constructive amendment and a "simple variance").  A constructive amendment occurs only "when the evidence presented at trial, together with the jury instructions, so alters the indictment as to charge a different offense from that found by the grand jury." *United States v. DeChristophe*, 695 F.3d 1082, 1094 (10th Cir. 2012); *United States v. Rosalez*, 711 F.3d 1194 (10th Cir. 1994) (holding that a constructive amendment "results when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions which so modify essential elements of the offense charged that there is a substantial likelihood that the defendant may have been convicted of an offense other than the one charged in the indictment")

4

(internal quotation marks omitted)).

The defendants have failed to meet their burden.  No constructive amendment – indeed, not even a simple variance – has occurred in this case.  Count 2, by its express terms, simply charges that the defendants conspired to "injure, oppress, threaten, and intimidate the residents of 312 West Mary Street" in their free exercise of their right to enjoy housing "without injury, intimidation, and interference" because of race, national origin, and religion.

The only essential elements required in this count are: (1) the defendant conspired with one or more persons to injure, oppress, threaten or intimidate one or more individuals, present within the United States; and (2) in doing so, the defendant intended to interfere with the person's free exercise or enjoyment of a right protected by the laws of the United States; here the Indictment charges that the right at issue is the right of the residents of 312 West Mary Street to sell, purchase, rent, or occupy a dwelling without injury, intimidation, or interference because of their race, national origin, or religion.

By its own terms, Count 2 focuses specifically on the defendants' plans to interfere with the rights of black, Muslim Somalis to live at 312 West Mary Street,[1] but does not restrict the *means* by which the defendants sought to achieve their conspiratorial goal.  To the contrary, the introductory allegation in the Superseding Indictment states explicitly that the term "residents of 312 West Mary Street" whom the defendants sought to intimidate, oppress, threaten, or intimidate, to achieve their conspiratorial goal includes "residents, tenants, and owners" of the complex. The language of Count 2 itself ("the right to sell, purchase, rent, and occupy") makes clear that the owners/landlords

---

[1] Contrary to the defendants' suggestion, Count 2 satisfies *United States v. Russell*, 369 U.S. 749 (1962), because it identifies with particularity the relevant time frame, the basis for the charge (i.e., conspiracy to interfere with fair housing rights and the protected characteristics, i.e., race, religion, and national origin, at issue), and the specific location of the apartment complex.

(i.e., those who sell and purchase property) fall within the scope of Count 2.

Although the defendants claim that Count 1, which charges the defendants with the use of a weapon of mass destruction, must be incorporated into Count 2, the government has found no cases – and the defense points to none – that suggests that the means for achieving the civil rights conspiracy charged in Count 2 is necessarily limited by the elements required to prove the defendants' guilt for Count 1.  Essentially, the defendants ask this Court to create, out of whole cloth, a rule that just because one count of an indictment requires the government to prove a specific element (i.e., the use of a weapon of mass destruction), the scope of every other conspiracy charged in an indictment must be coterminous with the elements of those other counts.  Such a rule has no support in the caselaw, is contrary to the common practice of including alternative but overlapping counts in an indictment, and is squarely at odds with the express language of the Introductory Allegation and Count 2 in the Second Superseding Indictment.

Moreover, the defendants can hardly now claim ignorance that Counts 1 and 2 as charged in the Second Superseding Indictment are different in scope.  The language of Count 2 specifically limits the scope of the civil rights conspiracy to the property located at 312 West Mary Street.  Yet, in requesting a bill of particulars on Count 1, filed more than two months before the start of trial, the defendants requested clarification of the phrase "'people and property within the United States, *if different than the 'residents of 312 West Mary Street' (Garden City, Kansas) alleged in Count 2*." (Defs. Mot. To Dismiss Count 1, ECF 212 (Jan. 11, 2018) (emphasis added).)  In other words, contrary to their current position, the defendants themselves recognized, months before trial, that

the scope of Counts 1 and 2 need not be identical.[2]

Nor can the defendants claim that Count 2 has caused them unfair surprise by incorporating a novel theory of liability.  The plain text of the statute expressly includes protections for people who, like landlords, are engaged in the rental of properties and are providing equal fair housing rights to others, such as the tenants living at 312 West Mary Street.  *See* 42 U.S.C. § 3631(a), (b) (expressly defining the categories of protected individuals).  For nearly five decades, the Supreme Court and lower courts have recognized that the protections afforded by the Fair Housing Act are "broad and inclusive," and must be given a "generous construction."  *Trafficante v. Metro. Life Ins. Co.,* 409 U.S. 205, 209 (1972) (noting that Congress intended that the Fair Housing Act would ensure that segregated neighborhoods would be replaced by "truly integrated and balanced living patterns") (internal quotation marks omitted); *see also* (Govt. Bench Brief Regarding the Conspiracy Charged in Count 2, ECF 291 (Mar. 12, 2018), citations and discussion therein.) Nothing in this longstanding caselaw limits these protections to tenants only.  *See, e.g.*, *United States v. Vartanian*, 245 F.3d 609, 615 (6th Cir. 2001) (upholding conviction under 42 U.S.C. § 3631 where a defendant threatened white real estate agents who had facilitated the sale of a home to an African-American couple and holding that "[t]he fact that a threat or act of intimidation was not addressed directly to the protected individual does not mean that those words or conduct cannot or will not have the effect desired by the defendant").  The logic underlying the breath of the statutory text and these cases is underscored by the evidence presented in this case – as the defendants themselves recognized, threatening a landlord with physical harm could be a highly

---

[2] In its response, the government confirmed that the scope of the two counts are not the same, and specifically averred that Count 1 included two properties – 305 West Mary Street and 312 West Mary Street.  *See* (Govt.'s Resp. to Defs. Mot. To Dismiss Count 1, ECF 219 (Jan 22, 2018).)

effective means to ensure that blacks, Muslim Somalis would not be able to find housing at 312 West Mary Street.[3]  (Govt. Ex. 16-UU.)

The cases cited by the defendants are easily distinguishable.  These cases hold that where, unlike here, the government chooses to include limiting language in the indictment, then the government is bound by that limiting language.  *See, e.g.*, *United States v. Bishop*, 469 F.3d 896, 901–03 (10th Cir. 2006), *abrogated in part on other grounds by Gall v. United States*, 552 U.S. 38 (2007).

For example, in *United States v. Farr*, the Tenth Circuit held that "'[i]f an indictment charges particulars, the jury instructions and evidence introduced at trial must comport with those particulars.'"  536 F.3d 1174, 1180 (10th Cir. 2008).  Because in *Farr* the government specifically included in the indictment that the defendant engaged in tax fraud through a specific means (i.e., failure to pay a quarterly employment tax) but the jury instructions included an additional means (i.e., a trust fund penalty) for engaging in tax fraud, the Tenth Circuit held that a constructive amendment had occurred because "the indictment effectively limited the first element of [of the tax fraud count] to liability for quarterly employment taxes which [the defendant] purportedly owed."  *Id.* at 1181.  Thus, the government was limited to the theory of liability that it had presented to the grand jury and on which the grand jury indicted the defendant.  However, the Tenth Circuit in *Farr* also acknowledged that "[h]ad the government simply charged Ms. Farr generically under Section 7201 with the willful evasion of a tax, we might have a different situation."  *Id.*

---

[3] Contrary to the defendants' suggestion, the government has not suggested that the defendants targeted the landlord because of the landlord's race, national origin, or religion.  (Defs. Mot. To Dismiss Count 2, at 6.)  Rather, the landlord is protected against injury, intimidation, and threats for his renting to people of a certain race, religion, or national origin.  *See* 42 U.S.C. § 3631(a), (b)(2) (expressly extending the statutory protections of the Fair Housing Act to any person who is engaged in the rental of properties or has afforded another person with the right to equal housing opportunity).

Similarly, in *Hunter v. New Mexico*, the other case upon which the defendants rely, the Tenth Circuit held that a constructive amendment occurred where the instructions allowed the jury to convict a defendant of "first-degree sexual penetration" of a minor based on two means – (1) sexual intercourse, and (2) digital penetration.  The express language of the indictment, however, limited the scope of the charge to "sexual intercourse" and did not include any reference to digital penetration which, at the time of some of the crimes alleged, could not constitute first-degree sexual penetration.  The Tenth Circuit held that the government should be bound to the limiting language that the government specifically included in the indictment.  *See id.* at 599.

Here, in contrast to the indictments in *Farr* and *Hunter*, the Second Superseding Indictment does not limit the civil rights conspiracy to the use of a weapon of mass destruction against the tenants, and the defendants' motion to limit the scope of the indictment should be rejected.  *See, e.g.*, *United States v. Etenyi*, No. 16-3364, 2017 WL 6523328, at * 7 (10th Cir. Dec. 21, 2017) (holding that where the indictment does not purport to provide an exhaustive list of means by which the government may prove liability, a defendant may be convicted based on means not explicitly listed mentioned in the indictment).  The indictment properly states the essential elements of a violation of § 241 – namely, the defendants' plans to injure, oppress, threaten, or intimidate the "residents of 312 West Mary Street" (which includes the owners) from the free exercise of their rights to sell, purchase, rent, or occupy those apartments because of race, national origin, and religion – without any restrictions on the means for achieving that goal.  Finding the defendants guilty of Count 2 for conspiring to interfere with the rights of the tenants at 312 West Mary Street through a different means – whether by shooting them, blowing up the apartment complex, or threatening to kill the landlord – does nothing to alter the essential elements of the civil rights

conspiracy charged in the plain language of Count 2 of the Second Superseding Indictment.

### B. Evidence of Motive and Planning

In addition to falling squarely within the admissible proof of the crime charged in Count 2, the evidence presented during trial concerning the defendants' discussions about how best to achieve their goal of interfering with the fair housing rights of blacks, Muslim Somalis living at 312 West Mary Street was properly admitted as evidence of their bias and planning. Such evidence is intrinsically intertwined with their plan for attacking the 312 West Mary Street apartments.

In *United States v. Magleby*, 241 F.3d 1306 (10th Cir. 2001), the Tenth Circuit approved of the admission of evidence showing a defendant's racial bias – including evidence of racist lyrics from a song that a defendant had played and sung along to – to prove that the defendant had violated 18 U.S.C. § 241 and 42 U.S.C. § 3631 when he burned a cross on the lawn of an interracial couple. *Id.* at 1318-1319 (noting that the evidence was "probative of [defendant's] intent" under both statutes). The court specifically noted that the "lyrics and other evidence of hostility toward the presence of African-Americans in this country [were] *intrinsic to a violation of § 241*." *Id.* (emphasis added). In rejecting the defendant's argument that the evidence was unfairly prejudicial, the Court explicitly held that the evidence was "probative . . . of [defendant's] intent under 18 U.S.C. § 241," and that its "probative value outweighed its prejudicial effect." *Id.*

Similarly here, evidence that the defendants considered attacking landlords and their family members, churches, refugee organizations, and government officials because of their willingness to rent to and otherwise assist black, Muslim Somalis living in Garden City is highly probative of the defendants' conspiratorial intent– i.e., their intent to deny the residents of 312 West Mary Street of their fair housing rights because of race, national origin, and religion – and is intrinsic to and

admissible to prove the violation of § 241 charged in Count 2.

In addition, the Tenth Circuit has squarely held that co-conspirators' discussions about potential targets of their attacks is admissible as intrinsic and inextricably intertwined to the ultimate execution of their plans.  *See, e.g.*, *United States v. Lambert*, 995 F.2d 1006, 1007 (10th Cir. 1993) (holding that discussions about potential targets for a bank robbery was admissible as inextricably intertwined with the charged crime, and holding that such evidence is admissible when "both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged"); *see also, e.g.*, *United States v. Parker*, 553 F.3d 1309, 1314 (10th Cir. 2009) ("Generally speaking, intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual background information to the jury.") (internal quotation marks and citation omitted).

Here, each defendant's membership in the civil rights conspiracy charged in Count 2 was established as soon as they agreed to interfere with the fair housing rights of the residents of 312 West Mary Street (as "residents" is defined in the Second Superseding Indictment).  The evidence concerning the different methods for achieving that conspiratorial goal, whether by shooting tenants, blowing up the complex, or killing the landlord, was all part and parcel of the charged conspiracy.  The use of a weapon of mass destruction was one, but certainly not the sole, plan for carrying out the conspiracy.  Accordingly, in addition to falling squarely within the charged conduct identified in Count 2 by its plain terms, all of the evidence related to the defendants' planning and choice of targets was also properly admitted under binding Tenth Circuit law as inextricably intertwined with the conspiracy charged in that Count.

**III.    Conclusion**

For the reasons stated above, the government respectfully requests that this Court deny the defendants' motion to dismiss Count 2 and to limit the evidence, instructions, and arguments about the civil rights conspiracy charged in Count 2.  The express language of Count 2 is inclusive and not limited to the use of a weapon of mass destruction, and the Second Superseding Indictment clearly incorporates both landlords and tenants within the scope of Count 2.

Respectfully submitted,

Stephen R. McAllister
United States Attorney

### _Anthony W. Mattivi_

ANTHONY W. MATTIVI
Assistant United States Attorney
District of Kansas
290 Carlson Federal Building
444 SE Quincy Street
Topeka, KS 66683
Telephone: (785) 295-2850
Anthony.Mattivi@usdoj.gov

### _Risa Berkower_

RISA BERKOWER
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 305-0150
Risa.Berkower@usdoj.gov

*__Mary J. Hahn__*

MARY J. HAHN
Trial Attorney
Civil Rights Division, Criminal Section
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 305-0921
Mary.Hahn@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the __16th__ day of April 2018, I caused the foregoing pleading to be filed with the Clerk of the Court, with a true and accurate copy provided to each counsel of record in the case.

*__Mary J. Hahn__*

Mary J. Hahn
Trial Attorney